## John R. Shaw & Co. *v.* John Nolan.

The holder of a promissory note bearing five per cent. interest, took a new note bearing eight per cent. interest, payable one day after date. *Held:* The endorser was discharged.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Stanton & Bradford,* for plaintiff. *R. H. Marr* and *Miles Taylor,* for defendant and appellant.

Rost, J. The petition in this case sets forth two distinct causes of action; one growing out of a contract for a sugar-mill and engine, the other on account of a promissory note made by *Lobdell* and endorsed by the defendant.

It is alleged, that on the 26th day of November, 1845, a contract was made between defendant and *James Goodloe,* of Cincinnati, by which *Goodloe* undertook to deliver to *Nolan,* at his plantation, in West Baton Rouge, a mill and engine of certain dimensions and specifications, to be finished 1st September, 1846; that the said contract was committed to writing by *John R. Shaw & Co.* acting as the agents of the parties for that purpose; that the mill and engine was furnished according to contract; that other machinery was also forwarded, and that *Nolan* was indebted on that account in the sum of $7,267 47, with interest from 31st March, 1847, and in the further sum of $203 83, the wages of an engineer; that *James Goodloe* assigned and transferred to plaintiffs, on the 29th January, 1851, all his rights, interest and claims against *Nolan,* under and by virtue of that contract. Plaintiff also avers that defendant is indebted to him in the sum of $5,000 on account of his endorsement of *Lobdell's* note, which was protested.

The defendant in his answer, insists that the mill and engine were not delivered according to contract; that it was imperfect and defective; and, in consequence thereof, he had sustained damage to a large amount, and assuming the character of plaintiff asks for judgment in his favor for $30,000. He pleads also, in substance, that he was not, as endorser, liable to pay the said note, because the plaintiff had taken a new note from *Lobdell,* the maker, giving time for the payment.

The District Court rendered judgment against the plaintiff on the note, and in his favor on the contract for mill and engine for the amount demanded, with interest from the ____ day of ____ 1851, and the defendant appealed.

4

The claim of the plaintiffs for the mill and engine, and that of the defendant in reconvention, turn upon questions of fact. The District Judge has reviewed the evidence in relation to them, with his usual discrimination and care, and the conclusions to which he has come meet our entire concurrence.

It cannot be seriously insisted that the contract sued upon was not entered into between *Nolan* and *Goodloe*, or that the mill and engine in controversy were not delivered in execution of it. *Nolan*, therefore, owes the price he agreed to pay, unless he establishes, at least partially, his claim in reconvention. On that claim he stands as plaintiff, and it is not enough that he should make his case probable, he must make it certain. We think he has failed to do so.

The machinery is shown to have been made in conformity to the contract and the evidence in relation to the manner in which it was put up, though conflicting, preponderates in favor of the plantiff. But even if it did not, we could not act upon it, because it would be impossible to ascertain from the other testimony, whether the breakages which occurred were caused by the machinery being put up out of line and out of level, or by overfeeding and other ill usage of the mill, and the unusual length of the cane and bagasse carriers, which *Nolan* required to be attached to the mill, and one of which he has since found it necessary to reduce, so as to be but a few feet in length.

But if all the facts alleged in the defence had been established, the defendant could not recover, because the damages he claims resulting from the loss of a portion of his cane by cold weather, are not shown to have been the necessary consequence of the breaking of the mill. He did not begin to grind until the 28th of November, and it is clearly proved that the delay was not caused by *Goodloe*, and that he finished putting up the mill and engine when *Nolan* permitted him to do so, and long before the sugar-house and bagasse chimneys were ready. There is nothing in the record to justify the belief that if *Nolan* had commenced at the usual time he could not have saved his crop, notwithstanding the accidents which occurred. There is no pretence for saying that the loss on the second crop was the result of defective machinery. The broken parts of the mill were all replaced by *Goodloe* without charge, and it seems now to be in all respects in conformity with the contract. We think it must be paid for.

The note of *Lobdell*, endorsed by the defendant, was protested at maturity for non-payment, and due notice was given to the endorser. More than two years after its maturity, the drawer paid the plaintiffs one thousand dollars on account, and some time after settled with them for the balance and gave them his due bill, payable one day after date, bearing eight per cent. interest from its date, the plaintiffs retaining the original note, until final payment. It is urged, in their behalf, that the taking of this note was not, under the facts of the case, a giving of time for payment, and that if it was, the stipulation was without consideration and therefore void.

Without conceding that the want of an apparent consideration, would be sufficient to avoid a promise to give time, we dissent from these two propositions.

It is settled by the highest authority, that the giving of a new note payable one day after date is giving time for payment, even when the original note remains in the hands of the creditor, and the cases in which this question has been decided differently are not satisfactory to us.

"Thomson on Bills, ch. 6, § 537, 543 (2d edit.) In *Gould* v. *Robson*, 8 East. R. 576, 579, which was the case of time being given by the holder to the acceptor on a bill of exchange, Lord Ellenborough said: 'How can a man be said not to be injured, if his means of suing be abridged by the act of another? If

the plaintiffs, holders of the bill, had called immediately upon the defendants for payment, as soon as the bill was dishonored, they might immediately have sued the accceptor and the other parties on the bill. I had some doubts at the trial, but am inclined to think now that time was given. The holder has the dominion of the bill at the time; he may make what arrangements he pleases with the acceptor; but he does that at his peril; and if he thereby alter the situation of any other person on the bill, as to the prejudice of that person, he cannot afterwards proceed against him. As to the taking part payment, no person can object to it, because it is in aid of all the others who are liable upon the bill: but here the holder did something more: he took a new bill from the acceptor, and was to keep the original bill until the other was paid. This is an agreement, that in the mean time the original bill should not be enforced: such is at least the effect of the agreement; and therefore I think time was given.' "

See Story on promissory notes, page 529.

There was a clear and apparent consideration for the new note in this case. It is made to bear eight per cent. interest, when the original note only bore interest at the rate five per cent. after the protest, and we would infer from the amount acknowledged by *Lobdell* to be due, after the payment he had made, that the interest charged in the settlement exceeded the legal interest. Mr. *Lobdell* is evidently mistaken when he says that the last note was given merely to show the amount of his then existing indebtedness; he did not owe interest at the rate of eight per cent. and the amount of that note exceeds his indebtedness on the original note, after deducting the payment made.

We are of opinion that the defendant is released from his endorsement.

The amount charged for extra work and materials furnished by *Goodloe* to *Nolan*, as well as the transfer of the account and of the sum due under the contract for the mill and engine are fully proved. But we think there is error in the allowance of $203 83 for the wages paid to the engineer who took off the first crop agreeably to the contract between *Nolan* and *Goodloe*. It was stipulated that the wages should not exceed one hundred dollars per month, and the grinding only lasted thirty-one days. There must be therefore a deduction of one hundred dollars on the judgment.

It is ordered that the judgment be amended so as to be in favor of the plaintiffs and against the defendant for the sum of $7,371 26, with interest at five per cent. per annum from the 24th of February, 1851, till paid, and that, as amended, the judgment be affirmed, the plaintiffs and appellees paying the costs of this appeal.